## STOKES *v.* CLARK *et al.*

1. Where a husband buys land belonging to the estate of his wife's father at administrator's sale on twelve months' credit, gives his notes for the purchase-money, and takes from the administrator a bond for title, and subsequently pays his notes, partly with money borrowed and partly with his wife's distributive share, with her consent, and takes a deed to the land in his own name, and thereafter sells one half of the land in payment of the money borrowed (which was much more than one half of the purchase-price), no implied trust as to the remaining half of the land arises in favor of the wife. The transaction amounts either to a gift or loan of money by the wife to the husband.
2. There was no error in granting a nonsuit.

Argued June 19,—Decided November 21, 1908.

Equitable petition. Before Judge Fite. Dade superior court. November 5, 1907.

*R. J. & J. McCamy* and *Ben. T. Brock,* for plaintiff.

*J. P. Jacoway* and *Payne & Payne,* for defendants.

EVANS, P. J. This was an action by W. L. Stokes against John Clark and J. A. Metcalf, to recover an undivided half interest in a described tract of land, mesne profits, and for an accounting. Upon the conclusion of the plaintiff's evidence a judgment of non-suit was entered, and error is assigned thereon. The material parts of the evidence are as follows: In 1872 George Tittle died, seized and possessed of several lots of land, and left surviving him a widow and ten children as his heirs at law, one of whom was the wife of John Clark. His real estate was sold by his administrator, and one of the lots of land was purchased by John Clark for $5,200. The sale was on twelve months' credit, and the administrator of Tittle received from Clark his notes for the purchase-money, and executed to Clark his bond for title. About 1874 Clark paid the administrator the purchase-money, and the administrator made him a deed. On settling with the administrator Clark used his wife's distributive share, amounting to something over $1,100, and borrowed the other money from the other heirs of Tittle. Clark soon afterwards sold half of the land to one Carroll, and from the proceeds paid back the money which he had borrowed. Mrs. Clark allowed her distributive share in her father's estate to be used in part payment of the purchase of the land by her husband. Clark has been in possession of the land sued for since his purchase, seemed to claim the property, and lived thereon with his wife until her death, and after his wife's death until he sold the land to Metcalf, who purchased with notice of the manner in which Clark acquired title to the land. A witness testified that during the time Clark was in possession of the land "Clark borrowed money from different individuals very often; I know, where some of the parties wanted the wife to sign a mortgage with him, she did sign two or three mortgages; I was not present; she said she signed one to Mr. Patterson, don't recollect whether she said anything about it being Clark's property or not." It was also shown that there was an execution against Clark, which was outstanding against him before his wife's death, but which was not collected until after her death. Clark applied for a homestead, and did not include this land in his application. Mrs. Clark died in 1900, leaving her husband and a daughter. The plaintiff is the heir at law of the daughter.

The theory of the plaintiff's alleged cause of action is that when Clark purchased the land with borrowed money and his wife's dis-

tributive share, taking the title to the land, and afterwards sold one half of the land and paid back the borrowed money with the proceeds of that sale, an implied trust arose in favor of the wife as to the remainder of the land. The plaintiff contends that the facts developed at the trial bring the case within the terms of the Civil Code, § 3159: "Trusts are implied—1. Whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase-money or other circumstances, is either wholly or partially in another. 2. Where, from fraud, one person obtains the title to property which rightly belongs to another. 3. Where, from the nature of the transaction, it is manifest that it was the intention of the parties that the person taking the legal title shall have no beneficial interest." A casual reading of this code section will suffice to show that it has no application to such a state of facts as the plaintiff developed in the trial of his case. There was no fraud or deception practiced by Clark on his wife. Her interest in her father's estate was used by Clark in part payment of his purchase with her consent. He was not acting as her agent. He did not undertake to buy the land for her. The purchase of the land by Clark was his individual act. He bid off the land in his own name, executed his own notes for the purchase-money, and when the notes were paid the deed to the land was made to him. When his wife permitted him to use her money in partial discharge of his notes, the transaction was either a gift or a loan of money. The law permits a wife to give money to her husband. If the transaction be construed as a loan, the wife's remedy would have been to recover her money. Certainly her heir can not assert title to any part of the land.

But it is said that Clark did not include the land in his application for homestead, and that this was a recognition by him of his wife's title to the land. Many explanations might be given of the omission. It may have been an intentional one, or it may have been that when he applied for a homestead he had deeded the land to secure a debt. But whatever may have been Clark's reason for not including the land in his homestead application, it does not follow that the omission of the land from the application was a recognition of the wife's title. A nonsuit was the only logical termination of this case. *Judgment affirmed. All the Justices concur.*